GLICKSTEIN, Judge,
concurring specially.
The only point, of the three raised by appellant, which is discussed herein or in the dissent is the trial court’s action in excluding the entire testimony of a defense witness who, during a proffer of his testimony, invoked the Fifth Amendment privilege as to critical questions involving the hit and run accident with which appellant was charged and convicted. In my view the trial judge did not abuse his discretion in excluding the testimony of Mr. Smothers, the witness.
Defense counsel, Mr. Broudy, had the witness sworn outside of the presence of the jury and the following questioning took place:
Q [By Mr. Broudy] Mr. Smothers, are you the owner of a 1975 Corvette vehicle with license number LXE-143?
A Yes.
Q Was that car involved in an accident on January 13th, 1986?
A Yes.
Q At that time was that car previously stored at the home of Tom Maul?
A Yes, sir.
Q And why was it stored there?
A Because he’s got a carport and the T-tops leak on it, so I usually park it under his garage there.
Q Now, on that date did Mr. Maul drive that vehicle?
A No, sir.
THE COURT: Any other questions?
MR. BROUDY: That was going to be solely my questioning.
Your, Honor, first of all two points. Those were going to be my questions as I call him for a defense witness on the stand. I wanted the Court to rule whether those questions will open the door if she asked on cross-examination other questions, such as—
THE COURT: We’re going to find out. Ms. Wells.
CROSS EXAMINATION
Q [By Ms. Wells] On January 13th, 1986, did you see Thomas Maul drive your car?
A No, ma’am.
Q On January 13th, 1986, were you driving your own car, a Chevrolet Corvette?
There was then considerable argument upon the issue.
The assistant state attorney then asked the witness:
Q [By Ms. Wells] Why do you know that Mr. Maul was not involved in an accident on January 13, 1986?
A ’Cause I know he wasn’t.
Q Why?
A I know he wasn’t.
Q How do you know that Mr. Maul was not involved in an accident on January 13th, 1986?
A I stand on the Fifth.
There was more argument; then the following occurred:
THE COURT: She’s asking the question: Was he driving the car?
The answer is no.
How do you know he wasn’t driving the car?
I’m not gonna tell you.
That’s the way I understand the testimony.
*1386 You can’t have it both ways.
MR. ANGERT [Mr. Smother’s attorney]: Excuse me, your Honor. Your Honor, that specific question he will be able to give an answer to without taking the Fifth.
THE COURT: Which question?
MR. ANGERT: How does he know.
THE COURT: If he wants to answer the question — Repeat the question again.
Q [By Ms. Wells] How do you know that Mr. Maul was not involved in an accident on January 13, 1986?
A ’Cause the car wasn’t at his house. It wasn’t in his possession.
Q Where was the car?
A I stand on the Fifth.
Q Whose possession was the car in on January 13th, 1986?
A I stand on the Fifth.
Q Who was driving the car on January 13th, 1986?
MS. WELLS: Same argument, Judge.
After further discussion — some on the record and some off — the trial judge said:
THE COURT: The Court herein finds that you are calling the witness knowing that he’s not subject to full, fair cross examination, which excludes the witness as a witness unless he subjects himself to full, fair cross examination on the subject matter, but if he testifies on direct you cannot ask the direct questions.
Your objections to this ruling are noted of record and shall be preserved on record in the event that there is an appeal.
This court in Insurance Company of State of Pennsylvania v. Estate of Guzma, 421 So.2d 597 (Fla. 4th DCA 1982), noted that it is error for a trial court to permit a witness, who is expected to invoke the Fifth Amendment, to be called to the stand because the inference that might arise from the refusal to testify would add critical weight to a party’s case in a form not subject to cross-examination. In the present case, Mr. Smother’s invocation of the privilege would have raised the inference that he, rather than appellant, was the driver of the vehicle involved in the hit and run accident, such inference being in a form not subject to cross examination.
Apfel v. State, 429 So.2d 85 (Fla. 5th DCA 1983), speaks for itself. It was an affirmance, approving the trial court’s action in disallowing a defendant to ask in front of the jury certain questions of a witness who had previously and validly asserted his privilege against self-incrimination.
United States v. Kaplan, 832 F.2d 676 (1st Cir.1987), upon which the dissent relies, involved a government witness whom the defense wished to impeach by undertaking cross-examination which would have resulted in the witness’ invoking the Fifth. The appellate court said the defendant should have had that opportunity. This case is dissimilar in that the defense herein wanted the witness to testify as to the incident without the state’s having the opportunity to cross-examine the witness effectively to determine the basis for the witness’ testimony on direct examination. The trial judge felt the defense was trying to “have it both ways.” I fail to see from the dissent how the trial judge abused his discretion in so concluding.
As to the dissent’s reference to the similarity in appearance between the defendant and Mr. Smothers, it merits mention that Officer Marcucci testified as follows:
Q Could you tell us what you feel are the differences of Mr. Smothers and Mr. Maul?
A Facial characteristics.
Q And when you say facial characteristics, what do you mean?
A Well, the identity, as the defense attorney pointed out, is very similar. But I’ve seen both of these men over a period of years and I can distinguish between the two. They are not like Siamese twins.
Q What about the hair?
A That hair on Mr. Smothers is more receded than that of Mr. Maul. The hair *1387 of Mr. Smothers is longer than that of Mr. Maul. Mr. Smothers’ has wavier hair, whereas Mr. Maul has curly hair, closely-knit curly hair.
Q Any other distinctions?
A Other than the ruddy complexion of Mr. Maul—